**LATHAM et al. v. KISTLER.　(No. 9644.)**

(Court of Civil Appeals of Texas. Fort Worth. July 10, 1921. Rehearing Denied Nov. 26, 1921.)

**1. Frauds, statute of ☞108(4) — Consideration need not be set out in memorandum of sale of land.**

A memorandum of a sale of an interest in real estate need not set out the consideration in order to be enforced by the purchaser, under Vernon's Sayles' Ann. Civ. St. 1914, art. 3965, providing that no action shall be brought upon an agreement for the sale of an interest in land unless it is in writing and signed by the party to be charged.

**2. Frauds, statute of ☞106(2) — Memorandum must be definite and certain as to be enforceable without resort to parol testimony.**

The memorandum required by the Vernon's Sayles' Ann. Civ. St. 1914, art. 3965, relating to the sale of lands, should be so reasonably definite and certain within itself, or other writing referred to, as to parties, consideration, and subject-matter, that specific performance can be enforced without a resort to parol testimony.

**3. Courts ☞107 — Decisions construed with reference to question under consideration.**

A decision of a court must be construed with reference to the question then under consideration.

**4. Evidence ☞445(1) — Contracts may be modified by subsequent oral agreement.**

A written agreement not within the statute of frauds may be modified by the subsequent oral agreement of the parties, and, when this is done, the contract consists, as a whole, of the original agreement together with the oral modification.

**5. Mines and minerals ☞74 — Party cannot waive breach and then stand thereupon.**

Where a written agreement was entered into for the sale of an oil and gas lease, wherein it was provided that purchasers execute certain notes secured by deed of trust on other lands, which should be free of incumbrance, and it appeared that the state had a lien on the latter land for 97½ cents per acre due on the purchase price from the state, and that it would be impossible for purchaser to procure a release from the state within the five-day period allowed them to consummate the trade, and seller was informed thereof and told that plaintiffs could not perform by reason thereof, and entered into a parol agreement to relieve the purchaser of the burden of procuring a release of that lien, and they agreed to proceed under the contract as so modified by the parol agreement, the seller must be held to have waived compliance with such provision in the written contract, and cannot set up such breach in an action by the purchaser for damages for breach of contract to sell.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Suit by W. H. Latham and others against E. L. Kistler and the Producers' & Refiners' Corporation. After plaintiffs dismissed as to the corporate defendant, judgment was rendered for defendant Kistler, and plaintiffs appeal. Reversed and rendered.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellants.

Weeks, Morrow, Francis & King, of Wichita Falls, for appellee.

DUNKLIN, J.　W. H. Latham, C. W. Culp, J. P. Barkley, and W. R. Meadows instituted this suit against E. L. Kistler to recover damages for the breach of a contract in writing made by Kistler to sell the plaintiffs an oil

and gas lease on ten acres of land in Wichita county. It was alleged that the contract was made in the name of the defendant Kistler, who owned the lease which he contracted to sell. But, in an alternative plea, it was alleged that, if Kistler did not himself own the lease at the time, the legal title to the same was in him as trustee for the use and benefit of the Producers' & Refiners' Corporation, for whose benefit he acted in making the lease, and upon that allegation said corporation was also made a party defendant and damages were prayed for against both the defendants. Plaintiffs having dismissed their suit against the Producers' & Refiners' Corporation, a judgment was rendered in favor of the defendant Kistler, and plaintiffs have prosecuted this appeal.

The contract which was made the basis of the suit was as follows:

"The State of Texas, County of Wichita.

"This memorandum of agreement entered this day by and between E. L. Kistler, acting by and through his duly authorized agent, R. P. Kistler, as part of the first part, and W. H. Latham, C. W. Delp, J. P. Barkley, and W. R. Meadows, as parties of the second part, witnesseth:

"First. That party of the first part has this day agreed to sell to parties of the second part and parties of the second part have this day agreed to purchase from party of the first part the oil and gas lease owned by him on the following described premises, situated in the county of Wichita and state of Texas, to wit: The southwest quarter of the northeast quarter of block No. 75, Red River Valley lands, subdivision according to the map or plat of said subdivision recorded in the deed records of Wichita county, Texas, to which reference is here made; said tract containing ten (10) acres more or less.

"Second. The consideration, which party of the first part agrees to accept therefor and which parties of the second part agree to pay therefor is the sum of forty thousand ($40,000.00) dollars, payable as follows: Ten thousand ($10,000.00) dollars cash in hand paid, the receipt of which is hereby acknowledged; and the execution and delivery to the party of the first part by parties of the second part of their three certain promissory notes to be dated April 18, 1919, each for the sum of ten thousand ($10,000.00) dollars, due on or before thirty (30), sixty (60), and ninety (90) days from date, bearing eight per cent. per annum from date; providing that a failure to pay one of said notes matures all of them, and providing for an additional ten per cent. for attorney's fees in case placed in the hands of an attorney for collection or suit is brought on the same.

"Third. Parties of the second part also agree to execute and deliver to party of the first part a deed of trust upon the oil and gas lease above described, also upon twelve hundred eighty (1,280) acres of land in Dallam and Hartley counties, Texas, for the purpose of securing the notes above mentioned; the twelve hundred eighty (1,280) acres of land being more particularly described as follows, to wit: Being section 30, block 48, H. & T. C. Ry. Co. lands, situated in Dallam and Hartley counties, Texas, being the lands of C. W. Delp; also section 141, block No. 48, H. & T. C. Ry. Co. lands, situated in Hartley county, Texas, being the lands of W. H. Latham; said two surveys containing twelve hundred eighty (1,280) acres, more or less.

"Fourth. Party of the first part agrees to execute and deliver to parties of the second part within five (5) days from April 18, 1919, a good and sufficient transfer and assignment covering the oil and gas lease above described; also .an abstract of title showing merchantable title to E. L. Kistler to said lease.

"Fifth. Parties of the second part are to take and accept the assignment executed to them by party of the first part covering this oil and gas lease subject to all of the terms and conditions of the original lease contract on said premises.

"Sixth. The parties hereto have this day deposited a copy of this contract, together with the cash, notes, and mortgage above mentioned, with the National Bank of Commerce, of Wichita Falls, Texas, to be kept and retained by said bank in escrow until the party of the first part shall deliver the assignment herein provided for, at which time the said cash, notes, and mortgage shall be delivered to party of the first part.

"Seventh. It is understood and agreed between the parties hereto that the land herein described, which is to be mortgaged to party of the first part, shall be free from any and all incumbrances and the title good in W. H. Latham and C. W. Delp. This information shall be furnished to party of the first part before the delivery of the assignment as herein provided.

"Witness our hands in duplicate this the 18th day of April, A. D. 1919. [Signed.] E. L. Kistler, by R. P. Kistler, Party of the First Part. [Signed.] W. H. Latham, Chas. W. Delp, W. R. Meadows, Parties of the Second Part."

It was further alleged:

That on the same day the contract was executed, "and after the execution of said contract, the attention of the plaintiffs was called to the provision to the effect that the lands upon which the deeds of trust were given should be free from all incumbrances, and that the plaintiffs explained to the said agent of the said E. L. Kistler, as he had before done, that there is a small amount of indebtedness due to the state of Texas on one tract of land, same having been school land, and that said tract would be incumbered to the amount of said debt to the state of Texas, and that it would be impossible to remove same within a reasonable length of time, and it was agreed that the contract should be varied so as to allow the incumbrance caused by the indebtedness to the state of Texas to stand against said land, and this variance was duly agreed upon and assented to by the defendant, acting by and through his agent R. P. Kistler; that in pursuance of the contract the plaintiff, at considerable expense, secured certificates showing the condition of the title of the lands of C. W. Delp and W. H. Latham as to incumbrances on said land, and the plaintiffs acting in good faith in all respects fully complied with said contract."

It was further alleged that in pursuance to said contract, as subsequently modified by the parol agreement, plaintiffs delivered to the National Bank of Commerce the sum of $10,000 in cash, also their three certain promissory notes provided for in said contract, and in all other respects complied with their part ·of the contract according to its terms and within the time stated; but that Kistler breached his contract and refused to execute the conveyance which he had contracted to make. It was further alleged that the reasonable market value of the lease for which plaintiffs had contracted at the date the defendant breached the contract was $200,000, and plaintiffs sought to recover of the defendant as damages $160,000, the difference between the market value and the contract price of $40,000.

The defendant Kistler filed general and special exceptions to the plaintiffs' petition and a general denial. He also pleaded specially that the contract upon which the suit was based is not a binding and enforceable contract, because as varied by the alleged subsequent parol agreement it was in contravention of the statute of frauds, requiring contracts for the sale of real estate or the lease thereof for a longer period than one year to be in writing; it being alleged that no portion of the alleged contract could rest in parol without violating the terms of that statute. It was further alleged that the alleged subsequent parol agreement, so varying the written contract as to bind the defendant Kistler to an acceptance of the deed of trust upon one of the tracts of land incumbered to the extend of 97½ cents an acre, while the contract required that said land should be free from all such incumbrances, was without consideration and therefore invalid. It was further alleged that said subsequent parol agreement could not be given effect because so to do would be to vary and contradict the terms of the written instrument; and that the section of land owned by plaintiff Delp, mentioned in the written contract, was his homestead, and for that reason no valid mortgage could be given thereon.

In a supplemental petition plaintiffs alleged that they furnished certificates from the abstracter of title at Dalhart showing the condition of the title of the two sections of land owned by plaintiffs Latham and Delp, and showing an incumbrance due the state of 97½ cents an acre on one tract, at a cost to plaintiffs of $20, relying upon the alleged parol agreement on the part of Kistler that he would accept as security the land so incumbered, and that by reason of those facts the defendant has waived his right to claim that said land should be free of all incumbrances as stipulated in the original contract, and for the same reason the defendant is now estopped to deny the binding effect of said subsequent parol agreement.

The trial of the case was before a jury upon special issues. Those issues, together with the findings of the jury thereon, were as follows:

(1) Find from the evidence whether or not the defendant E. L. Kistler, after the contract introduced in evidence had been signed by all the parties thereto and after the same had been accepted by the parties as being a concluded agreement, verbally agreed with the plaintiffs that he would waive that provision of the contract requiring the section of land belonging to C. W. Delp to be free from incumbrances, or that he would waive the incumbrance in favor of the state of Texas of 97½ cents per acre.

Answer: Yes.

(2) If you have answered the first question "Yes," then you will find from the evidence whether or not the plaintiff relied upon and acted upon said agreement, and, so relying upon same, incurred the expense of obtaining a certificate of title, and complied with the contract on his part by depositing in the bank, as provided in the contract, the notes and deed of trust provided in the contract.

Answer: Yes.

(3) You will find from the evidence whether or not the section of land belonging to C. W. Delp, and referred to in the written agreement, was at the time of the making of the contract the homestead of C. W. Delp.

Answer: No.

In connection with the last issue submitted to you, you are charged that when a homestead is once acquired and actually used and occupied as such by the head of a family, that the same continues the homestead of the family unless abandoned by the husband as such, and by abandonment is meant that the property shall cease to be used as a homestead and that there exists in the mind of the husband an intention never to return and use the same as a homestead in the future. In this connection you are further charged, however, that it is not essential to the abandonment of a homestead that another homestead shall be acquired; it being sufficient if the husband has actually ceased to use the same as a homestead with the intention never to return to and use the same as a homestead in the future.

(4) Find what was the reasonable market value of the leasehold estate in the lands described in plaintiffs' petition on the 26th day of April, A. D. 1919.

Answer: $15,000 per acre.

After the verdict was rendered, Hon. James T. Montgomery, who acted as special judge in the trial of the case, filed the following conclusions of law, upon which judgment was rendered in favor of the defendants:

"This case was tried before me, as special judge, and certain issues of facts were submitted to the jury.

"Upon consideration of the whole case, in connection with the findings of the jury, I have reached the following conclusions:

"This suit is one for the recovery of damages by the vendee for the breach of a contract

(235 S.W.)

to convey an interest in land. The petition does not allege either fraud, accident, or mistake in the negotiation or preparation of the written contract.

"In view of the verdict of the jury upon the only controverted issues, which are, of course, conclusive, the whole case turns upon the application of the statute of frauds to the facts as established. The written contract, among other things, provides that a portion of the unpaid purchase money should be secured by a mortgage on certain lands which it was agreed should be free of all incumbrances or liens. The facts show that the lands, or a portion of them, were not so free of incumbrances, but were subject to unpaid purchase money due the state of Texas.

"Upon trial of the case the plaintiffs, over the objection of the defendants, were permitted by me to prove, and the jury found, that after execution of the contract there was a verbal agreement to waive the incumbrances in favor of the state upon part of the land.

"Being in some doubt as to the law applicable to the case, and in order that the whole case might be properly settled upon appeal by either party, I submitted the controverted issues of fact to the jury, and, as appears from the verdict, the jury found that after the execution of the contract that the parties made a verbal agreement to the effect that the incumbrances due the state should be waived. After a more careful examination of the authorities furnished me and some independent investigation on my own part, I have concluded that the provision of the written contract referred to above was of such nature as could not be verbally waived, and that the verbal agreement was, in effect, a new contract for the sale of an interest in land, or that at least it attempted to vary and modify the terms of the written agreement, and, not being in writing, was therefore unenforceable either in an action for specific performance or for damages. But for my view as to the effect of the statute of frauds, I would be compelled to render judgment for the plaintiffs, but, believing as I do that the statute of frauds is applicable, it is my opinion that notwithstanding the verdict that judgment should be rendered for defendants. I accordingly order that judgment be entered for defendants, that plaintiffs take nothing, and defendants take their cost."

[1] It thus appears that the controlling question involved upon this appeal is whether or not the plaintiffs were precluded from a recovery by reason of the statute of frauds (article 3965, V. S. Tex. Civ. Statutes), which reads as follows:

"No action shall be brought in any of the courts in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized: * * * 4. Upon any contract for the sale of real estate or the lease thereof for a longer term than one year."

In 3 Williston on Contracts, § 1437, in discussing the subject of "Specific Performance," the author says:

"It is the generally established law that a memorandum of a contract within the statute of frauds, if signed by the party to be charged, though not signed by the other party, makes the contract enforceable against the party who has signed it."

To the same effect is 25 R. C. L. p. 671, § 307.

The contract in controversy was a bilateral contract and executory on the part of each of the parties thereto, and the obligation of each party 'was the consideration for the agreement of the other party.

In interpreting statutes of fraud substantially the same as our statute, different authorities have applied two different rules of construction; one the rule of strict construction and the other of liberal construction. According to those adopting the rule of strict construction, when a contract such as the one in controversy in this suit is involved, the requirements of the statute of frauds apply only to the contract of the defendant, upon which the suit is based, and which is sought to be enforced, and do not apply to the contract of the plaintiff, which was the consideration for the defendant's promise. In other words, according to that rule of construction, it is not necessary that the plaintiff's contract, which was the consideration for the defendant's contract, be embodied in the written instrument. According to the more liberal rule of construction, the requirements of the statute apply to the contract as a whole, including the contracts of both parties, requiring the plaintiff's contract as well as that of defendant to be in writing.

These two different constructions of the statute have led, logically, to two lines of conflicting decisions; the decisions in each line being based upon that particular rule of construction which they adopt as a premise.

If the plaintiff's obligation, as well as that of the defendant, is required to be embodied in the written instrument, then it follows that no modification or change in his contract can be established by evidence of a subsequent parol agreement; in other words, as a condition precedent to a recovery against the defendant, plaintiff would be compelled to show performance on his part of his contract as embodied in the written instrument. But if the statute of frauds does not require that the written instrument embodying the defendant's contract shall also include plaintiff's executory contract, given as a consideration for the defendant's contract, then the statute would not preclude proof that plaintiff's original agreement in writing had been subsequently modified or changed by a valid parol agreement, and that he had complied with his agreement as so modified, provided such modification or change can be establish-

ed under the rules governing contracts generally, aside from the statute of frauds.

In Williston on Contracts, §§ 570 to 574, inclusive, in discussing the statute of frauds, there is a review of authorities; some holding that it. is necessary that a written contract, signed by the defendant and upon which a recovery is sought against him, should embody also plaintiff's contractual consideration therefor; others holding that it is not necessary that the written contract which has been signed by the defendant should also express the consideration to be performed by the plaintiff. And the learned author expresses his disapproval of the latter view.

Following the rule of strict construction, the latter' view, however, has been adopted by the Supreme Court of this state, which has settled the law of this state on that question. And in Morrison v. Dailey, 6 S. W. 426, the same conflict in the decisions is pointed out by our Supreme Court.

In Atkins v. Watson, 12 Tex. 199, Justice Wheeler said:

"The statute of frauds does not require that the price stipulated * *, * for land sold shall be evidenced by writing."

Fulton v̇. Robinson, 55 Tex. 401, was a suit in trespass to try title. Plaintiff relied upon the following instrument to show title:

"Received of James Henderson three hundred dollars, in part payment of a certain tract of land, being my own headright, lying on Rush creek, in the cross-timbers, this 23d March, 1859. Israel Earles."

[2, 3] In disposing of the case, the court said:

"The mere fact that it was in the form of a receipt would not of itself defeat it as a memorandum of contract for the sale of land, if sufficient in other respects. Dial v. Crain, 10 Tex. 553; authorities cited in Peters v. Phillips, 19 Tex. 74.

"Under the decision in the case of Peters v. Phillips, the memorandum would be sufficient under the above statute, if it was such as required by the statute of frauds. Pasch Dig. art. 3875.

"The general rule has often been announced in other courts as well as our own, that the memorandum under the statute of frauds should be so reasonably definite and certain within itself, or other writing referred to, as to parties, consideration, and subject-matter, that specific performance can be enforced without a resort to parol testimony.

"The cases in our own reports must be construed with reference to the question then under consideration, and the settled construction given to the statute by this court.

"Following the line of our decisions, it is said in Thomas v. Hammond that, in this state, the rule is settled that it is not necessary that the consideration of a contract for the sale of lands should be expressed in writing. 47 Tex. 55;

Ellett v. Brittain, 10 Tex. 208; Atkins v. Watson, 12 Tex. 199.

"In the elaborate opinion by Chief Justice Hemphill, in the above case of Ellett v. Brittain, the authorities upon aᵏkindred question to the one now before the court were reviewed, and the construction given to the statute in Packard v. Richardson, 17 Mass. 124, that the consideration need not be expressed in the writing, but might be proved by parol, was adopted; and it was said that the weight of American authority did not coincide with the rule to the contrary in Warn v. Walters, 5 East; and that latterly the force of this last-named case had been much weakened in England."

Both of those decisions were followed and cited with approval in Showalter v. McDonnell, 83 Tex. 158, 18 S. W. 491. See, also, Morrison v. Dailey (Sup.) 6 S. W. 426. To the same effect are Thomas v. Hammond, 47 Tex. 42; Crutchfield v. Donothan; 49 Tex. 691, 30 Am. Rep. 112; and Simpson v. Green (Sup.) (opinion dated June 1, 1921, not yet [officially] published) 231 S. W. 375.

Following are some of the authorities of other states predicated upon the contrary rule of liberal construction and holding that since plaintiff's executory contract, as well as that of defendant, comes within the operation of the statute of frauds, it cannot be modified or changed by a subsequent parol agreement: Rucker v. Harrington, 52 Mo. App. 481; Ladd v. King, 1 R. I. 224, 51 Am. Dec. 624, and other decisions cited in note 12, § 352, 25 R. C. L. p. 709; Bradley v. Harter, 156 Ind. 499, 60 N. E. 139. But Malkan v. Hemming, 82 Conn. 293, 73 Atl. 752, also cited by appellee, was a suit by a vendor of realty to enforce specific performance by the purchaser to pay the purchase price, and the ruling was that it was not permissible for plaintiff to prove a material change in his contract to sell by a subsequent parol agreement between the parties, since such parol agreement would be in contravention of the statute. of frauds. That case is easily distinguishable from the present suit for lack of mutuality, in that the purchaser could not have specifically enforced the oral contract against the vendor. See, also, Williston on Contracts, §§ 570 to 574, and decisions there cited; and decisions cited in Morrison v. Dailey, 6 S. W. 426.

[4] Independently of the statute of frauds, plaintiff's contract, expressed in the written instrument in controversy, could not be changed by evidence of a contemporaneous or prior parol agreement; but as said in 25 R. C. L. p. 708, § 352:

"It is a well-settled rule that a written agreement, not within the statute of frauds, may be modified by the subsequent oral agreement of the parties, and when this is done, the contract consists as a whole of the original agreement together with the oral modification."

[5] It was shown by uncontroverted proof that it would have been impossible for plaintiffs to procure from the state a release of its lien for the 97½ cents an acre due on the land within the five-day period allowed them to consummate the trade, and that by reason of that fact Kistler was informed that plaintiffs could not and would not proceed under the contract. By reason of that fact Kistler entered into the parol agreement to relieve the plaintiffs of the burden of procuring a release of that lien, and then both parties agreed that they would proceed under the contract as originally written and as so modified by the parol agreement. The proof further showed without controversy that the plaintiffs fully performed their contract as so modified before the expiration of the five-day period allowed them for such performance by the terms of the written instrument; and thereafter Kistler, after being informed that plaintiffs had fully performed their part of the contract, refused to execute to plaintiffs the conveyance of the lease which he had bound himself to execute.

When Kistler was so informed of the impossibility of plaintiffs to carry out the contract as it had been written, he had the choice of two courses to follow, namely, either to stand upon his right to hold plaintiffs for a breach of their contract as expressed in the instrument, or to permit them to proceed under it as modified by the parol agreement, and himself to be bound thereby. Having elected the latter course, he waived any right to claim a breach by the plaintiffs of the contract as originally made as against plaintiffs' demand asserted in the present suit.

In 2 Williston on Contracts, § 683, p. 1318, the following is said:

"Election as a term in the law is properly applied to a case where a person has the choice of one or two alternative rights or remedies. In choosing the one, he necessarily surrenders the other. This principle is not inconsistent with the general rule that the surrender of a right requires a sealed release or consideration, because the choice made by election gives the one making it an advantage which he could not otherwise have had. Though he surrenders one right he gains or keeps by so doing another and inconsistent right. Thus when a contract is broken in the course of performance the injured party has a choice presented to him of continuing the contract or of refusing to go on. If he chooses to continue the performance he has doubtless lost his right to stop performance; but in the nature of the case he could not exercise the two inconsistent rights of which he had the choice."

Again the same author says, in section 723:

"After a contract for the purchase and sale of real estate has been made, it sometimes proves impossible for the seller to perform his contract because of an incumbrance on the property, or lack of title to a portion of it, or some other deficiency which prevents him from giving the marketable title for which the buyer has contracted. Under these circumstances the buyer may refuse to proceed (unless the circumstances are such as to justify equity in compelling him to take the title with compensation), or he may, if he chooses, elect to take what the seller can give. This is merely a question of election. It is like any other case of contract where one party elects to continue performance in spite of a breach of condition by the other party. No consideration is necessary to make such an election binding, and no other element of estoppel than is afforded by the change of position involved in accepting inadequate performance."

For the reasons indicated, the judgment of the trial court in favor of appellee, Kistler, is reversed, and judgment is here rendered in favor of the appellants against said appellee, E. L. Kistler, for the sum of $110,000, with interest thereon at the rate of 6 per cent. per annum from May 26, 1919, to the present date, together with all costs of the suit in the trial court and in this court. Spaulding v. Smith, 169 S. W. 627. The judgment dismissing plaintiffs' suit as against defendant the Producers' & Refiners' Corporation is undisturbed.

Judgment reversed and rendered.

On Appellee's Motion for Rehearing.

In 1 Williston on Contracts, § 598, the following is said:

"Where the extension of time or other variation of the contract is requested by one party because of his inability to perform the contract according to its terms, or in any case where he would have been thus unable, an agreement by the other party permitting an extension or variation cannot be said to be the cause of the failure to perform the contract according to its original terms. Here, if the party guilty of nonperformance is allowed to recover or is protected from liability on the original obligation because of his readiness and willingness to perform the extended or varied contract, he is relying merely on a voluntary permission or on an oral contract within the statute. There is no equity forbidding the statute to be set up under these circumstances. The situation is not different in its hardship from that which arises when an oral contract within the statute is denied enforcement."

In his motion for rehearing, appellee, after quoting the foregoing, uses the following language:

"We cannot overimpress the court with the above quotation, because it is certainly exactly in point with the case involved."

In the first place, what is stated by the author is not exactly in point, in any event, since the plaintiffs in the present suit did not rely merely upon an offer to perform their contract with the defendant as modified by the oral agreement, coupled with a showing of their readiness and willing-

ness to perform the same, but they alleged and proved that their said obligation was fully performed within the time limit fixed by the defendant in the written contract. That fact makes a material difference, as shown by what is said in 1 Williston on Contracts in section 571, which is as follows:

"When an offer for a unilateral contract is made, the offer is conditional on performance of the act requested as consideration, but when that act has been performed the contract and the promise of the obligor are absolute and a memorandum may express the whole contract, though it makes no mention of the consideration. The same principle may be applicable in a bilateral contract after performance on one side; for a transaction which was originally bilateral may become a unilateral contract by the acceptance of full performance by one side. Accordingly, here, too, a memorandum of the promise which stated it in absolute terms would be an accurate statement of the promise in the second or unilateral contract, though it would not be an accurate statement of the promise in the first or bilateral contract. The memorandum, it is true, is made before the unilateral contract arises, but it is no valid objection to a memorandum that it was made before the contract. The result therefore is that it is a reasonable construction of the language of the statute to conclude that the executory performance which will be due from each party must be stated in the memorandum, but that so much of the bargain as has been fully executed need not be stated. This result is supported by the weight of authority in the United States, as shown by the decisions cited in the preceding section. It seems, too, that this result is practically the most desirable. Where performance on one side has been rendered, there is a double reason, aside from the technical words of the statute, why no statement of the performance should be necessary in the memorandum. In the first place, something has been done; not merely said. The transaction does not rest wholly in parol. In the second place, the injustice of the situation created is serious if a party who has fully performed cannot recover." .

In the second place, a reading of the decisions cited by the author in footnotes to section 598, cited by appellee and quoted above, demonstrates that the author did not intend to be understood as announcing something at variance with what he had said in other sections of the work which we have quoted above and in our original opinion. The first American case cited by the author in the footnote to section 598 is Swain v. Seamens, 9 Wall. 254, 271, 19 L. Ed. 554. In that suit Swain sold certain real estate to Medbury and Aldrich for a consideration of $52,000, of which amount $10,000 was paid in cash, and a mortgage was executed by the purchasers on the property so sold, to secure the balance of the purchase price. As a further security for the purchase-money notes Medbury also gave to Swain a mortgage on other property upon which had been erected a flouring mill. Prior to said purchase and sale, the foundation of a sawmill, to be 50 by 150 feet. in dimension, had been commenced on the property sold, and when Medbury gave the mortgage on the flouring mill as additional security to Swain for the purchase money, Swain indorsed a written agreement upon the back of that mortgage that if the purchasers completed the sawmill in a proper manner and upon the foundation already commenced within two years from the date of the sale, he would accept fire insurance policies on the sawmill as security in place of the mortgage on the flouring mill given by Medbury, and would thereupon cancel and discharge the mortgage on the flouring mill. Thereafter Medbury sold the flouring mill to Seamens and other appellees who instituted the suit against Swain to compel the cancellation of the mortgage which Medbury had executed on the flouring mill. They based their action upon Swain's written contract to cancel. They alleged a substantial compliance with all the conditions of the agreement for cancellation and within the time limit specified in the agreement. They did not claim that the sawmill, which had been built and completed, was of the precise dimensions mentioned in the agreement, but they alleged it was of larger dimensions than those specified in the agreement, and better adapted for the purpose for which it was intended, and that the mill as built and completed was orally recognized and accepted by Swain as a compliance with that agreement. One of the defenses urged by Swain was that his oral agreement to accept the mill after its completion as a full compliance with his written agreement, for cancellation was void because in contravention of the statute of frauds of the state where the contract was to be performed.

In discussing that contention the Supreme Court, in effect, held that as long as the oral agreement was unperformed it came within the operation of the statute of frauds, and could not be relied on by plaintiffs; thus adopting the rule of liberal construction of the statute referred to in our opinion on original hearing, to the effect that not only the contract of the defendant which is sought to be enforced must be in writing but also that of the plaintiff given in consideration therefor. But after so holding, and referring to the oral modification of the written contract relied on by the plaintiffs, the court said:

"Regarded, therefore, as a mere executory agreement to accept the mill when built and completed, it is clear that the statute of frauds would be a good defense to a suit for a breach of it; but it cannot be viewed in that light, as it was fully executed on the part of the mortgagors, and was in fact fully executed on the part of the appellant.

"3. He is not sued for a breach of the agree-

ment to accept the mill as built and completed; but the suit is to compel him to cancel and discharge the mortgage as agreed in the written stipulation. Called upon to plead to the bill of complaint, he sets up the defense that the dimensions of the mill vary from those specified in the stipulation, to which the complainants reply that he acquiesced in the change at the time the work was done, and that he accepted the mill as built and completed, and they prove the allegations to the entire satisfaction of the court. They built and completed the mill 78 feet in width by 100 feet in length, at an expense exceeding $30,000, and the appellant not only accepted it when completed as a compliance with the stipulation, but he also accepted the policies of insurance procured on it as security in the place of the second mortgage, and he cannot now be permitted to avoid the true issue, nor to devest the transaction of its real character in order that he may set up the statute of frauds.

VII. 1. Even part performance is often admitted in equity as an answer to the statute; but it is not necessary to invoke that principle in this case, as it is clear that the appellant acquiesced in the changes made in the plan, and that the mill, as built and completed, was accepted by him as a compliance with the stipulation. 1 Story, Eq. Jur. (9th Ed.) §§ 759, 761; Browne, Frauds (2d Ed.) § 463."

See, also, Morris v. Gaines, 82 Tex. 255, 17 S. W. 538.

Appellee has filed a lengthy and able brief in which many authorities are cited and discussed. It would unduly lengthen this opinion to discuss all of those authorities. We have carefully considered them, however, but do not find in them any sufficient reason for changing the conclusions we have reached upon original hearing.

We deem it not amiss to add that the defendant Kistler did not testify upon trial and offered no defense to plaintiffs' suit for damages for his breach of contract, except those discussed in our opinion on original hearing.

Appellee's motion for rehearing is overruled.

