McKY et al. v. WALKER et al.　(No. 7738.)

Court of Civil Appeals of Texas. San Antonio.
March 30, 1927.

Rehearing Denied April 27, 1927.

1. Frauds, statute of ⬯118(3)—Letters and telegram describing land authorizing abstract and referring to "deal" held sufficient "writing" under statute.

Letters and telegram of vendor and her agents, describing land by numbers, acreage, and county, authorizing making of abstract and deduction of its cost from purchase money and stating she wished prompt closing, and afterwards saying "deal was off," held sufficient writing under statute.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Writing—Writings.]

2. Frauds, statute of ⬯103(1)—Informal writing relating to land contract may satisfy requirements of statute.

Writing required by statute on contract for sale of land may be informal, such as a letter or receipt.

3. Frauds, statute of ⬯118(3)—Connected letters forming one transaction are admissible to show memorandum of sale within statute.

If several letters are so connected with each other as to form one transaction, they are admissible to show a writing or memorandum of sale within statute.

4. Frauds, statute of ⬯108(4)—Writings need not state consideration to effect contract for sale of land within statute.

It is not necessary to state the consideration in the writings to effect a contract for sale of land within statute.

5. Frauds, statute of ⬯152(2)—Vendor's failure to plead statute waived defense in suit for specific performance.

Vendor's answer in suit for specific performance waived statute by failure to plead it.

Appeal from District Court, Hidalgo County; J. E. Leslie, Judge.

Suit for specific performance by Scott McKy and another against Mrs. Mamie J. Walker and others. Judgment for defendants, and plaintiffs appeal. Reversed and rendered.

H. L. Yates, of Brownsville, and Gaines, Quin, Harley & Gaines, Douglas & Carter, and O. B. Black, all of San Antonio, for appellants.

Dawson, Hill & Walker, of Mission, and S. E. McHard, of Houston, for appellees.

FLY, C. J. This is a suit for specific performance instituted by Scott McKy and G. A. Tanberg against Mrs. Mamie J. Walker, Sarah M. Walker, and John H. B. Walker, the contract sought to be enforced being to convey land in Starr county, consisting of two tracts, each containing 1,280 acres of land. The cause was submitted to the court, without a jury, and judgment was rendered that appellants recover nothing by their suit. The court found as facts that the land belonged to Mrs. Mamie J. Walker, and that the other defendants, appellees here, had no interest in the land, and that the minds of the parties did not meet and consequently there was no contract of sale of the land.

The facts indicate that Sarah M. Walker was a daughter and John H. B. Walker a son of Mrs. Mamie J. Walker, and were her agents and empowered to bind her in a contract for the sale of the land. John Walker orally contracted with appellants to sell the land to them, and his mother was by him informed of the sale and fully ratified it. She testified in the case and contradicted testimony of her son and daughter that they had the authority to represent her in the sale of the land. She, however, confirmed and ratified the sale orally, as well as in writing. Her son was her authorized agent, and he negotiated the sale of the land at $3.75 per acre. Afterwards appellants, through their attorney, requested an abstract of title to the lands, and in reply to that letter Monroe, her agent in Rio Grande City, Starr county, wrote that Mrs. Walker had requested him to prepare the abstract and send to appellants; the $125 to be paid by appellants for the abstract to be subtracted from the purchase money. McKy's attorney sought to confirm the statement of Monroe by writing to Mrs. Walker, who replied by telegram: "Money to Mister Monroe entirely satisfactory if sale is a certainty." The telegram was followed by a letter from Mrs. Walker, in which she asked if Monroe had completed the abstract, and she added: "Will you be good enough to let me know how the business is progressing?" In answer the attorney informed her that he had the abstract and would furnish his opinion to his client on the next day and added: "It is probable that I will send you a deed for your signature to attach to draft and send to one of the local banks within the next three or four days." The attorney received a letter on July 6, 1925, in which Mrs. Walker declined to sell two other tracts about which Yates, the attorney, had written her and added: "Trusting to hear from you about the other matter, I remain," etc. Yates then wrote her about a survey which Monroe said had to be made and told her that the survey would cost $150. Mrs. Walker, on July 22, 1925, wrote about the survey and stated: "I should like to get this matter closed up as soon as possible, as I have a place to invest this money to good advantage so would like to know definitely." On August 12, 1925, Yates wrote Mrs. Walker asking if he should pay draft

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

for surveying fee and deduct it from the price of the land. In answer to that letter Mrs. Walker wrote that she had wired that the "deal was off" and that she had leased the land to an oil company, and that if appellants wanted "money for abstract and field notes send same to First National Bank with draft attached." The daughter swore that she had written the letters and telegrams for her mother and signed the mother's name thereto with her knowledge and consent. That testimony was not contradicted, except by the mother, and the letters and messages must be treated as though Mrs. Walker had written and signed her name to them.

There undoubtedly was a contract made between appellants and Mrs. Walker for purchase and sale of the land at the certain fixed sum of $3.75 per acre, and appellants were willing and able to pay that sum in cash, if the letters were authorized by Mrs. Walker. This is emphasized by the fact that when appellees answered with the allegations, "The said defendants deny that the said plaintiffs are able and willing to pay the sum of $3.75 per acre for said land in controversy and demand that the money be paid into court at the inception of this suit for the land aforesaid," appellants answered that the money had already been paid into the registry of the court. There is no room for any doubt as to the minds of the parties meeting and entering into a contract, and the letter written by Mrs. Walker breaching the contract reveals that it was deliberately done because she thought there was a chance to discover oil on the land. She acknowledged that there was a contract "on" when she declared it "off."

[1] The only question involved in the case is as to whether there is sufficient in writing, written by authority of Mrs. Walker, to take the case out of the purview of the statute of frauds. The language of the statute of frauds is:

"No action shall be brought in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized: * * * Upon any contract for the sale of real estate or the lease thereof for a longer term than one year."

[2, 3] The writing referred to will be sufficient, however informal, such as a letter, a receipt, and other informal papers. If several letters are so connected with each other as to form one transaction they are admissible to show a writing or memorandum of sale. Browne, Statute of Frauds, 346 et seq.; Railway v. Settegast, 79 Tex. 256, 15 S. W. 228.

The land was described by section numbers, acreage, and the county in which it was situated. In a letter written by Monroe to Yates he stated that a letter written by Yates to Mrs. Walker had been sent to Monroe with instructions to make out an abstract of title and send the same to Yates, who was to pay for the abstract and take the amount out of the purchase money. A telegram confirmatory of Monroe's letter was sent by Mrs. Walker to Yates. Afterwards Mrs. Walker, by letter, confirmed her telegram and asked as to how the matter was progressing. The letters and telegrams evidence a sale.

[4] Mrs. Walker swore that her son and daughter were not authorized to negotiate for sale of the land or to sign her name to telegrams or letters, and denied that either of them had ever spoken to her about negotiations for the sale of land, and yet she stated that she had no knowledge of receiving a letter from Yates speaking of the contract of sale, and then admitted that she had knowledge of sending that letter to Monroe with instructions to prepare the abstract. She also admitted receiving the telegram in which Yates asked her if he should pay Monroe $125 for the abstract of title and "receive credit on purchase price of the land." She admitted putting the original telegram in the hands of her attorney. It is evident that she knew of the acts of her son and daughter in connection with the land and ratified the acts. The contract of sale was thoroughly understood and acquiesced in by her. Monroe was her agent for rendition of the land for taxation. It was not necessary to state the consideration in the writings to make it a sale. Thomas v. Hammond, 47 Tex. 42; Fulton v. Robinson, 55 Tex. 401; Simpson v. Green (Tex. Com. App.) 231 S. W. 375; Latham v. Kistler (Tex. Civ. App.) 235 S. W. 938.

In the case of Morrison v. Dailey (Tex. Sup.) 6 S. W. 426, the Supreme Court, through Judge Gaines, held that a receipt couched in this language, "Received from H. Morrison forty dollars on my place, known as the 'James Perry tract of land,' which tract I have sold to him for forty-five hundred dollars, part cash, and the balance to bear interest at 10 per cent. per annum," was sufficient to convey the title. The receipt had been objected to on the ground that the description of the land was insufficient and that it did not show the terms of the contract. The court in sustaining the receipt as a memorandum of title said: "We regard it as now settled, in this state, that all the terms of the contract need not appear in the memorandum." The court copied with approval the ruling in Fulton v. Robinson, 55 Tex. 401, upholding a receipt as a memorandum of title which stated that the amount received was "a part of the purchase money of my own headright, lying on Rush creek, in the Cross timbers," which was signed by

the owner. If those two decisions be correct, and that cannot be doubted, the memoranda in this case would sustain title and remove the case from the ban of the statute of frauds. The letter of Monroe to Yates was in part as follows:

"Mrs. Walker has no abstract to sections 884 and 888 and requests me to make same and send to you and to be paid out of the money in the deal. This abstract will cost in the neighborhood of $125 and you may send check for the sum of $50 on the abstract and the balance to be paid on delivery. Mr. McKy has certainly made a good deal, but Mrs. Walker needs the money and she has to sell."

Yates immediately telegraphed Mrs. Walker to confirm what Monroe had said, and she did so. She wrote a letter and inquired if the abstract had been made. In other letters she expressed anxiety to have the matter closed. She authorized a survey of the land, the money paid for it to be taken out of the purchase money. She admitted receiving a letter from Yates about the abstract, which letter she sent to Monroe. After denying in her direct examination that her son and daughter were her agents, on cross-examination she showed that they had acted with her knowledge and consent and that she had ratified and confirmed their acts in connection with the sale of the lands. The possible discovery of oil on the land changed the aspect of affairs, and the contract of sale was breached.

[5] The cause was decided on an issue not made by the evidence, the question of the minds of the parties not meeting; in other words, that no contract was made. The only question presented by the facts is that of whether the contract was evidenced by a writing in such manner as to lift it from under the ban of the statute, and that question was not raised by the answer of appellees. In justice to the trial judge it may be stated that his action in passing upon the question only of whether any contract in writing or in parol was made was probably superinduced by the answer of appellees, which did not set up the statute of frauds and thereby waived it. De Proy v. Progakis (Tex. Civ. App.) 259 S. W. 620.

The judgment will be reversed, and it is the judgment of this court that appellants recover for the sums of $125 and $150 advanced by them on the purchase money, and that the contract as herein indicated and prayed for be specifically performed by appellees, and that they pay all costs, the money deposited in court to be paid to Mrs. Walker, after deducting the advances named and the costs incurred in this and the lower court.

On Motion for Rehearing.

The witnesses who testified in person in the lower court by their testimony sustain the judgment of this court rather than that of the lower court; in fact, their uncontradicted testimony shows that Mrs. Walker contracted to sell the land to appellants. She alone denied the agency of her son and daughter in connection with the contract of sale, and she testified by deposition, and this court is in as strong a position to pass upon the truth of her deposition as is the trial judge. From her contradictory statements and admissions we conclude that her testimony should not break down the testimony of the other witnesses. Her statements are utterly irreconcilable, and we have given the appellants the benefit of her evidence in their favor rather than her assertions in her own favor. Her admissions show beyond the peradventure of a doubt that she knew of the transaction and fully sanctioned it, and only breached it when she imagined that there would be more money in leasing it to seekers after oil. This court did not "go into the realms of speculation, and find the existence of a fact upon which there was not one word of testimony introduced into the record," in holding that the "possible discovery of oil on the land changed the aspect of affairs and the contract of sale was breached." Mrs. Walker admitted that she had declared the "deal was off" and that she had leased the land to an oil company. Such companies are usually on the trail of oil.

The question of the statute of frauds was waived by appellees in their answer.

The motion for rehearing is overruled.