# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-08-00230-CV

SDN, Ltd. f/k/a SDN, Inc. and Paul DeNucci, Appellants

v.

JV Road, L.P.; Mike Young; MY/ZP IP Group, Ltd. f/k/a Chuy's Comida Deluxe, Inc.;
and MY/ZP IP GP, LLC, Appellees

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
NO. D-1-GN-07-000284, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## MEMORANDUM OPINION

Following failed negotiations for the sale of a tract of land on Jollyville Road, appellants SDN, Ltd. f/k/a SDN, Inc. and Paul DeNucci sued appellees JV Road, L.P., Mike Young, MY/ZP IP Group, Ltd. f/k/a Chuy's Comida Deluxe, Inc., and MY/ZP IP GP, LLC[1] for breach of contract, breach of the duty of good faith and fair dealing, negligent misrepresentation, breach of fiduciary duty, fraud, fraudulent inducement, fraud in a real estate transaction, and commercial bribery. The district court granted summary judgment in favor of Young on DeNucci's claims for breach of contract, fraudulent inducement, and fraud in a real estate transaction, and, in part, on DeNucci's claims for breach of fiduciary duty and breach of the duty of good faith and

---

[1] For clarity, we refer to appellants collectively as DeNucci, and to appellees collectively as Young, except where necessary to distinguish among appellants or appellees in reciting historical facts.

fair dealing. A jury found in favor of Young on each of DeNucci's remaining claims, except commercial bribery, which DeNucci abandoned. DeNucci appeals the district court's summary judgment as to breach of contract, arguing that the statute of frauds had been satisfied and that evidence of spoliation precluded summary judgment. DeNucci also appeals the district court's refusal to submit a jury instruction on the existence of a fiduciary duty. We affirm the judgment of the district court.

In late 2005, Paul DeNucci became interested in building a mid-rise retirement condominium building in north Austin. He had considered several properties for his "Arboretum Project," including the property at issue here—the Montez tract—located on Jollyville Road across the street from the north Chuy's Restaurant in Austin. JV Road, L.P., through Mike Young, had purchased the Montez tract in early 2006 with the intention of building additional parking for its adjacent Chuy's restaurant. Soon after the purchase, DeNucci, who had also been interested in purchasing the Montez tract, approached Young and proposed that, if they were able to secure the appropriate zoning, he would buy it from Young, build the condominiums, and incorporate an overflow parking lot for Chuy's to use at no cost. According to DeNucci, when he met with Young a second time, Young agreed to sell DeNucci the Montez tract subject to their successful efforts to obtain the zoning needed for the project. They purportedly agreed that DeNucci would pay the same price that Young had paid for the property, plus holding costs and other expenses associated with the purchase.

In addition to developing the Montez tract, DeNucci and Young discussed purchasing and developing the adjacent Henges tract to create an even larger area for development.

Young contacted Henges and made offers on behalf of DeNucci to purchase the property. Henges rejected these offers.

While negotiations between DeNucci and Young continued, the two worked to secure the rezoning necessary for the condominium project, but they agreed that they would do nothing in their rezoning efforts that would jeopardize Young's chances of getting the tract rezoned for parking in the event that zoning efforts for the condominiums failed. DeNucci had hired Amelia Lopez-Phelps to pursue the rezoning with the City, and Young hired Paul Linehan, a land planner, to protect his interests and to monitor DeNucci and Lopez-Phelps.

On July 7, 2006, DeNucci sent an email to Young, in which he described the status of his efforts to buy the Henges tract and to secure rezoning for the project. In addition, DeNucci listed "some issues that we would need to make sure we all agree on," including the number of parking spaces available for Chuy's, the price, the timing, the possibility of a temporary parking lot, and other miscellaneous issues, including an issue with an easement and sewer service. Young replied the same day and copied several of his colleagues. He clarified the easement issue for DeNucci and directed his colleagues to find answers to some of the questions posed by DeNucci. Young's email was silent as to price.

On August 28, 2006, Young, on behalf of JV Road, L.P., signed the "Owner's Certificate" on an application to the City's board of adjustment, listing JV Road, L.P. as "sellers to" SDN. By his signature, Young authorized Lopez-Phelps to act as his agent in submitting the application, which requested a height variance for the condominium project and included a description of the Montez tract.

3

When neighbors learned of this application, they expressed intense opposition to the rezoning request. In the face of this opposition, negotiations between Young and DeNucci deteriorated, and Young eventually informed DeNucci that he would pursue his own zoning efforts through Linehan. By January 2007, Young had obtained approval for the zoning change that would permit him to use the property as overflow parking for Chuy's.

On February 1, 2007, DeNucci sued Young. DeNucci asserted causes of action for breach of contract, breach of the duty of good faith and fair dealing, negligent misrepresentation, breach of fiduciary duty, fraud, fraudulent inducement, fraud in a real estate transaction, and commercial bribery. The district court granted summary judgment in favor of Young on DeNucci's claims for breach of contract, fraudulent inducement, and fraud in a real estate transaction. The district court also granted summary judgment as to DeNucci's claims for breach of fiduciary duty and breach of the duty of good faith and fair dealing as those claims related to the alleged sale of real estate. A jury found in favor of Young on each of DeNucci's remaining claims, except commercial bribery, which DeNucci abandoned. In three issues DeNucci appeals the district court's summary judgment as to breach of contract, including an implied finding on spoliation, as well as the district court's refusal to submit a jury instruction on the existence of a fiduciary duty.

In his first issue, DeNucci argues that the trial court erred in granting summary judgment on his breach of contract claim because the parties had an agreement sufficiently memorialized to satisfy the statute of frauds. Summary judgment is proper when there are no disputed issues of material fact, and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A defendant who conclusively negates at least one essential element of the

4

plaintiff's cause of action is entitled to summary judgment. *Little v. Texas Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). We review the trial court's summary judgment de novo, taking as true all evidence favorable to the nonmovant and indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Where, as here, a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

To establish the existence of an enforceable contract, a party must prove (1) an offer, (2) acceptance of the offer, (3) mutual assent or "meeting of the minds" regarding the subject matter and essential terms of the contract, and (4) consideration, or mutuality of obligations. *See Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). In determining whether the parties have formed a contract through offer, acceptance, and mutual assent to the contract terms, we rely on the objective standard of what the parties said and how they acted, not on their subjective state of mind. *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 589 (Tex. App.—Austin 2007, pet. denied); *see Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006) ("the parties' intent is governed by what they said, not by what they intended to say but did not").

A contract for the sale of real estate must not only meet general requirements for enforceability but must also comply with the statute of frauds. Tex. Bus. & Com. Code Ann.

5

§ 26.01(b)(4) (West 2009); *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978). Section 26.01 of the business and commerce code provides:

> (a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is
>
> > (1) in writing; and
> >
> > (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.
>
> (b) Subsection (a) of this section applies to:
>
> . . .
>
> > (4) a contract for the sale of real estate . . . .

Tex. Bus. & Com. Code Ann. § 26.01. Whether an agreement satisfies the requirements of the statute of frauds is a question of law. *Bratcher v. Dozier*, 346 S.W.2d 795, 796 (Tex. 1961); *West Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 264 (Tex. App.—Austin 2002, no pet.).

To satisfy the statute of frauds, "there must be a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony." *Cohen*, 565 S.W.2d at 232. The written memorandum, however, need not be contained in one document. *Padilla v. La France*, 907 S.W.2d 454, 460 (Tex. 1995).

According to DeNucci, Young agreed to sell him the Montez tract for the price he had paid for it, plus holding costs and other expenses associated with the purchase, conditioned on DeNucci's securing the necessary zoning change from the City. To satisfy the statute of frauds,

6

DeNucci relies on Young's signing of the "Owner's Certificate" on the application to the City's board of adjustment as "sellers to" SDN. DeNucci argues that the signed application proves that the parties had agreed on all material terms and that those material terms can be found in a series of email communications between him and Young.

Although the Board of Adjustment application contained a description of the property, stated that JV Road, L.P. was "seller[] to" SDN, Ltd., and was signed by Mike Young, the agreement was not an agreement between the parties and was not made for the purpose of memorializing an agreement to sell the real property at issue. It was an application in which Young represented himself as the seller—or potential seller—and in which he authorized Lopez-Phelps to act as his agent, but did not show that a sale had been made or that a contract had been signed. Moreover, the application contained none of the material terms, including the price for which the property would be sold. The application represented Young's attempt to secure rezoning with the City, which was a prerequisite to a sale between Young and DeNucci. The application was not an agreement to make a sale of real property.

DeNucci also relies on a series of email correspondence between the parties that, he alleges, demonstrates in writing that he and Young had agreed to all material terms. Specifically, he refers to a July 7, 2006 email in which he sets out the status of his negotiations with Henges and his thoughts about incorporating the Henges tract. He continues by proposing to proceed with the project without the Henges tract. DeNucci then writes: "There are some issues we would need to make sure we all agree on." He then sets out a list of five items yet to be agreed upon, including the number of parking spaces available for Chuy's, the price, the timing, the possibility of a

temporary parking lot, and other miscellaneous issues, including an issue with an easement and sewer service. On the same day, in response to this email, Young wrote:

> We jointly developed the property with Joe's and have a reciprocal parking agreement that, I believe, will allow us to use it as we see fit. We will need to have Ann look at the joint use agreement (Hatcher will you get this from Sharon and to Ann v?). As for the other stuff...it makes more sense to get henges on the plate... I believe it is good for you to talk to his atty and see if you can't figure it out.
> As for the 60 spaces...
> Hatcher and zapp: do you guys feel like this is enough additional parking????
> Erin: what about the zoning and if Paul wants to apply for zoning change, don't we need to make the application and is the zoning change he needs the same we need to park if Paul goes away. And if Paul is turned down, can we still reapply for a less aggressive zoning that will allow us to build a parking lot??
> Please get back...
> Mike

Nothing in Young's response reflects that he agreed to any of the "issues we would need to make sure we all agree on." Rather, the email exchange shows that the parties were in ongoing negotiations about the details of the project, including the area on which the project would be built—with or without the Henges tract—as well as the price for which the land would be sold. DeNucci points us to no other writings included in the summary judgment record that, read either alone or in conjunction with other documentary evidence, indicate that the parties had agreed on the material terms of the alleged contract. *See Cohen*, 565 S.W.2d at 232; *see also Baylor*, 221 S.W.3d at 635.

DeNucci argues that, to satisfy the statute of frauds, an agreement to sell real property need contain only three elements: a signature, a property description, and a reflection of an intent to convey. In support of this contention, DeNucci cites *Street v. Johnson*, 96 S.W.2d 427 (Tex. Civ.

8

App.—Amarillo 1936, no writ), *Key v. Pierce*, 8 S.W.3d 704 (Tex. App.—Fort Worth 1999, pet. denied), and *Garner v. Redeaux*, 678 S.W.2d 124 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). However, these cases do not support DeNucci's contention. Each of these cases required that the writing in question contain all material terms, including price. *See Street*, 96 S.W.2d at 429 ("A memorandum which states a sale of land, identifying it by an adequate description, and which specifies the price and is dated and signed by the seller, is sufficient to support a suit for specific performance against him."); *Key*, 8 S.W.3d at 708 (written agreement must "furnish[] written evidence of a contract and its essential terms"); *Garner*, 678 S.W.2d at 126 ("the writing, whether a formal contract or a mere memorandum, must contain the essential terms of a contract"). In *Street*, the price was included in the writing. 96 S.W.2d at 429. In *Key*, the seller had agreed in writing to sell the land to the highest bidder. 8 S.W.3d at 706. The buyer's tendered cashier's check, along with the deed of trust and the notice of sale—which was signed by Key, included a written description of the property, and stated that the property would be sold to the highest bidder—provided all the essential terms of the contract. *Id.* at 708. In *Garner*, the price was written on the back of the check: "pd this account two thousand dollars & Bal Four Thousand in payment." 678 S.W.2d at 126.

DeNucci also relies on *McKy v. Walker*, 293 S.W. 921 (Tex. Civ. App.—San Antonio 1927, writ ref'd). In *McKy*, the price had been negotiated at $3.75 per acre. 293 S.W. at 921. The court of civil appeals based its opinion in part on a letter that referenced the cost of an abstract "to be paid out of the money in the deal." However, it is unclear from the opinion whether the price was included in any of the writings. *Id.* at 923. Thus, the *McKy* court did not hold that price was

9

not material or not required to be a part of the writing. In the event that *McKy* might be read not to require all material terms to be in writing, we are of the view that more recent supreme court holdings clarify that all material terms be in writing. *See, e.g.*, *Cohen*, 565 S.W.2d at 232.

Reviewing all the summary judgment evidence in the light most favorable to DeNucci, as we are required, Young has conclusively negated the existence of a genuine issue of material fact with respect to the writings by showing that the writings on which DeNucci relies are insufficient to satisfy the statute of frauds. All of the writings, including the one on which DeNucci relies to show the existence of an agreement, show that negotiations were ongoing and that there was never any agreement as to various material terms, including price.

DeNucci argues that, even if the writings were insufficient to satisfy the statute of frauds, there was evidence that Young promised to sign a writing that would satisfy the statute of frauds and, therefore, promissory estoppel bars the statute's application and requires enforcement of the otherwise unenforceable agreement. DeNucci, however, cites to no evidence in the record to support his contention that Young ever promised to sign such an agreement. Indeed, the evidence in the record demonstrates the contrary—that the parties had continued to negotiate and to pursue their rezoning efforts—but that no agreement had been reached. The evidence shows that the contract that DeNucci claims Young agreed to sign was drafted by DeNucci and signed by DeNucci only. It expired by its own terms on September 15, 2006, was eventually delivered to Young on October 12, 2006, and was immediately rejected in writing by Young. The evidence shows that the parties had not reached agreement, and DeNucci points to no evidence raising a fact issue otherwise. Promissory estoppel does not bar application of the statute of frauds.

10

DeNucci also argues that he and Young were fiduciaries, and the existence of a fiduciary duty barred application of the statute of frauds. To impose even an informal fiduciary duty in a business transaction, a special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998). It is undisputed that DeNucci and Young met when DeNucci approached Young to discuss the proposed condominium project. The parties had no relationship at all before the negotiations made the basis of the suit. The type of arms-length transaction entered into here for the parties' mutual benefit does not establish the basis for a fiduciary relationship. *See id.* The evidence shows only that DeNucci and Young chose to pursue rezoning efforts for their mutual benefit and that they were negotiating a deal in the event that their rezoning efforts were successful. There was no fiduciary relationship between them, and there is no evidence that, as DeNucci contends, Young's agent Linehan became DeNucci's agent as a result, or that Linehan ever independently agreed to act as DeNucci's agent.

A review of the summary judgment record shows that the parties never agreed in writing as to the material terms of the contract—that negotiations were ongoing and eventually deteriorated before any agreement was reached. Having found no agreement sufficient to satisfy the statute of frauds and no circumstance barring application of the statute, we overrule DeNucci's first issue.

In his second issue, DeNucci argues that the district court erred in granting summary judgment because there was evidence of spoliation, which would act to preclude summary judgment. Citing *Adobe Land Corp. v. Griffin, L.L.C.*, 236 S.W.3d 351 (Tex. App.—Fort Worth

11

2007, pet. denied), DeNucci argues that summary judgment on his spoliation claim was improper because a spoliation instruction was later submitted to the jury. However, as to those claims submitted to the jury, even if we were to find that summary judgment was improper, there was no harm, as the spoliation instruction was submitted to the jury. We are limited to resolving those issues necessary to the disposition of the appeal, and can reverse only for harmful errors. *See* Tex. R. App. P. 44.1(a), 47.1. Given that, despite the summary judgment, the spoliation instruction was nevertheless submitted to the jury as to DeNucci's remaining claims, we are not persuaded that summary judgment on this issue probably led to an improper decision as to the claims submitted to the jury. *See* Tex. R. App. P. 44.1(a).

To the extent that DeNucci challenges summary judgment on the spoliation issue only as it pertains to his breach of contract claim disposed of on summary judgment, we find that summary judgment was proper, as Young conclusively negated DeNucci's spoliation claim. As part of his spoliation claim, DeNucci had to establish that Young, the non-producing party, had a duty to preserve some evidence that had existed but is no longer available. *See Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 721 (Tex. 2003). However, DeNucci refers us to no missing evidence that would have been relevant to his claims. Indeed, he refers us to no missing evidence at all. Instead, DeNucci argues that, because no documents were sufficient to satisfy the statute of frauds, Young must have destroyed them.

There is no evidence of the existence of a document relevant to the statute of frauds inquiry—a document that memorializes an agreement between the parties—that was unknown to DeNucci or in existence but not delivered to DeNucci. Emails sent by Young to DeNucci would be accessible to DeNucci. Documents signed by Young and delivered to DeNucci would also be

12

accessible to DeNucci. To the extent that DeNucci argues that Young destroyed unsent email drafts or drafts of letters, DeNucci has failed to show how such drafts would be relevant to his breach of contract claim. *See id.* Accordingly, we overrule DeNucci's second issue.

In his third issue, DeNucci argues that the district court improperly denied DeNucci's request for a jury instruction on fiduciary duty. At trial, DeNucci objected to the court's submission of a question about the existence of an informal, rather than formal, fiduciary duty. As explained in our summary judgment discussion above, there is no evidence of any fiduciary duty between Young and DeNucci, formal or informal. *See Associated Indem. Corp.*, 964 S.W.2d at 288. The district court acted within its discretion in refusing to submit a jury instruction on this issue. *See* Tex. R. Civ. P. 278; *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000) (trial court's decision to submit or refuse a jury instruction is reviewed for an abuse of discretion); *4901 Main, Inc. v. TAS Auto., Inc.*, 187 S.W.3d 627, 631 (Tex. App—Houston [14th Dist.] 2006, no pet.) ("A trial court may refuse to submit a question to the jury if: (1) there is no evidence; (2) there are no pleadings; or (3) the issue is uncontroverted."). Accordingly, we overrule DeNucci's third issue.

Having overruled each of DeNucci's issues, we affirm the judgment of the district court.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed: March 24, 2010