Kevin KEY, Federal Home Loan Mortgage Corporation, Dallas–Fidelity National Title Agency, Inc., Lrt Record Services, Inc., Andrew Jopling, Valerie Jopling, Appellants and Appellees,

v.

Stewart PIERCE, Appellee and Appellant.

No. 2–98–165–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 2, 1999.

---

**20.** *See Rojas v. State,* 943 S.W.2d 507, 509 (Tex.App.—Dallas 1997, no pet.).

Law, Snakard & Gambill, P.C., B. Blake Cox, Davney D. Bassel, Fort Worth, Prager, Metzger & Kroemer, PLLC, J. Richard Tubb, Dallas, Balcom, Mann & Stevens, Diana Estella Stevens, Houston, for appellants/cross appellees.

Bruner, Jamieson & Pappas, L.L.P., Nicholas S. Pappas, Bryan D. Bruner, Wil-

liam, L. Latham, Fort Worth, for appellee/cross appellant.

Panel B: DAUPHINOT, RICHARDS, and HOLMAN, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

### I. INTRODUCTION

In this appeal, we are primarily asked to decide whether the statute of frauds was complied with in a nonjudicial foreclosure sale. We hold that it was. Accordingly, the buyer was entitled to a declaratory judgment awarding him title to the property. Further, because there was no genuine issue of material fact as to the buyer's other causes of action against the sellers arising out of the foreclosure sale, the sellers were entitled to summary judgment as to these theories.

### II. BACKGROUND FACTS

#### A. Nonjudicial Foreclosure

The facts in this case were undisputed in the trial court. In March 1989, Richard and Nancy Wilson executed a deed of trust in favor of Federal Home Loan Mortgage Corporation (FHLM)[1] on their home in Arlington. The Wilsons defaulted on their obligation, and FHLM requested that Kevin Key, as substitute trustee, post the property for a nonjudicial foreclosure sale. On November 13, 1995, Key posted a notice under the terms of the deed of trust[2] that stated the property would be sold to the highest bidder for cash on December 5 between 1:00 p.m. and 4:00 p.m. at the Tarrant County Courthouse.[3]

Stewart Pierce is a real estate investor who regularly attends the "First Tuesday" foreclosure sales. At the foreclosure sale, Key bid $55,068 on behalf of FHLM. Pierce then bid $55,069 and was the highest bidder. Key accepted Pierce's bid and gave Pierce approximately 30 minutes to return with the money. After Pierce left, Key's employer, LRT Record Services, Inc. (LRT), told Key that the Wilsons had declared bankruptcy and that the foreclosure sale was invalid. Pierce returned within the time limit with a cashier's check for $55,069. When Pierce tried to give the check to Key, Key told Pierce that the Wilsons had filed for bankruptcy and he would not accept the money. The next day, Key discovered that the Wilsons had not filed for bankruptcy.

On December 12, Key filed another notice that the property would be sold at a nonjudicial foreclosure sale on January 2, 1996. At the January 2 sale and before Key began the bidding for the Wilson's property, Pierce again tried to tender his $55,069 check to Key. But FHLM had authorized Key to bid up to $139,784.91 for the property. Thus, FHLM's bid was the highest at the January 2 sale. Key executed a deed conveying the property to FHLM.

#### B. Subsequent Litigation

On February 9, 1996, Pierce filed a notice of lis pendens on the property. That

---

1. The original mortgagee was ICA Mortgage Corporation, but ICA later assigned the deed of trust to FHLM.

2. The deed of trust provided:
 If Lender invokes the power of sale, Lender or Trustee shall give notice of time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday in any month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the property at any sale.
 Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty.

3. *See* Tex. Prop.Code Ann. § 51.002(a)-(b) (Vernon 1995).

same day, Pierce filed suit against Key and FHLM seeking a declaratory judgment awarding him title to the property. FHLM sold the property to Andrew and Valerie Jopling on February 14, 1997. The Joplings currently live on the property and have designated it as their homestead. Pierce amended his petition to add the Joplings, LRT, and LRT's parent company, Dallas–Fidelity National Title Agency, Inc., as defendants.[4] Aside from the declaratory judgment, Pierce asked for (1) damages for misrepresentation and violations of the Deceptive Trade Practices Act (DTPA) and (2) a constructive trust based on fraud and unconscionable conduct. All the defendants responded that Pierce's claims were barred by the statute of frauds.[5]

Pierce filed a motion for partial summary judgment asking for a judgment declaring that he is the legal and equitable owner of the property, that Key's deed to FHLM was void, and that FHLM's deed to the Joplings was void. The defendants filed a motion for summary judgment under rule 166a(c) and rule 166a(i),[6] again asserting the statute of frauds prohibited Pierce's declaratory judgment action and arguing that his tort and DTPA claims were barred because these claims sounded only in contract and because Pierce failed to produce any evidence on at least one element of each of his causes of action. The trial court signed a final summary judgment:

> The Court . . . is of the opinion and finds that [Pierce's] Motion For Partial Summary Judgment should be granted, that portion of Defendants' Motion For Summary Judgment that [Pierce] take nothing on his declaratory judgment action claim based on the statute of frauds

should be denied, that portion of Defendants' Motion for Summary Judgment which seeks judgment that [Pierce] take nothing on [Pierce's] Texas Deceptive Trade Practices Act claims should be granted, that portion of Defendants' Motion For Summary Judgment which seeks judgment that [Pierce] take nothing on [Pierce's] misrepresentation and negligent misrepresentation claims should be granted, and any other portion of Defendants' Motion for Summary Judgment which seeks judgment that [Pierce] take nothing as to any claims made by [Pierce], except [Pierce's] declaratory judgment action, should be granted. . . .

Accordingly, the trial court voided the deeds and awarded Pierce a fee simple interest in the property once he deposited $55,069 with the court. The trial court further ordered that Pierce take nothing on his other claims against the defendants.

### III. STANDARD OF REVIEW

 When both sides move for summary judgment and the trial court grants one motion and denies the other in part, we should review both sides' summary judgment evidence and determine all questions presented.[7] We should render the judgment that the trial court should have rendered.[8] When, as here, a trial court's order granting summary judgment does not specify the grounds relied upon, we must affirm the summary judgment if any of the summary judgment grounds are meritorious.[9]

### IV. STATUTE OF FRAUDS

A contract for the sale of real estate is not enforceable unless it is

---

4. We will collectively refer to Key, FHLM, Dallas–Fidelity, LRT, and the Joplings as "the defendants."

5. *See* Tex. Bus. & Com.Code Ann. § 26.01 (Vernon 1987).

6. Tex.R. Civ. P. 166a(c), (i).

7. *See Commissioners Ct. v. Agan,* 940 S.W.2d 77, 81 (Tex.1997); *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988) (orig.proceeding).

8. *See Agan,* 940 S.W.2d at 81.

9. *See Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995).

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.[10]

The defendants argue that no writing sufficient to satisfy the statute of frauds exists. Pierce asserts that the posted notice of sale and the deed of trust are sufficient memoranda to satisfy the statute.

 Whether a contract comes within the statute of frauds is a question of law.[11] The statute of frauds requires the written agreement or memorandum to contain all of the essential elements of the agreement so that the contract can be ascertained from the writings without resort to oral testimony.[12] It does not require that the contract itself be in writing.[13] Rather, the written instrument merely furnishes written evidence of a contract and its essential terms.[14] A valid memorandum of the contract may consist of numerous communiques signed by the party to be charged and addressed to his agent or the other party to the contract, or even to a third party not connected with the transaction.[15]

 In this case, the notice of sale was signed by Key, describes the property, and states that the property will be sold to the highest bidder for cash. The deed of trust also dictates when, where, and upon what terms the property must be sold. It further requires Key to deliver a trustee's deed to the highest bidder. These, along with Pierce's tendered $55,069, provide all

essential terms of the contract and satisfies the statute of frauds.[16] Accordingly, the trial court correctly granted Pierce a summary judgment on his declaratory judgment action. We overrule the defendants' first two issues they brought as appellants.[17]

## V. DTPA AND MISREPRESENTATION CLAIMS

In issues one, three, four, and five, Pierce argues that the trial court erred by granting the defendants' summary judgment motion on Pierce's DTPA, fraudulent misrepresentation, and negligent misrepresentation causes of action.[18] For the reasons stated below, we overrule these issues.

### A. FRAUDULENT MISREPRESENTATION

Pierce alleged that the notice of sale and Key's oral statements that the property was sold to Pierce after the December 5, 1995 sale were false representations that Pierce relied on to his detriment. Pierce stated in his affidavit that he relied on the notice that the property would be sold to the high bidder and would not have bid on the property but for the notice.

 A fraud cause of action requires "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon,

10. TEX. BUS. & COM.CODE ANN. § 26.01(a)(1)-(2).

11. *See Bratcher v. Dozier,* 162 Tex. 319, 346 S.W.2d 795, 796 (1961).

12. *See Cohen v. McCutchin,* 565 S.W.2d 230, 232 (Tex.1978).

13. *See Maginn v. Norwest Mortgage, Inc.,* 919 S.W.2d 164, 167 (Tex.App.—Austin 1996, no writ).

14. *See EP Operating Co. v. MJC Energy Co.,* 883 S.W.2d 263, 267 (Tex.App.—Corpus Christi 1994, writ denied).

15. *See id.*

16. We do not decide whether the statute of frauds does, indeed, apply to a nonjudicial foreclosure sale.

17. Because we hold the statute of frauds, if applicable, was complied with, we do not need to address the defendants' remaining two issues.

18. Although Pierce refers to his complaints as "cross issues," they are actually independent issues Pierce is raising as an appellant by virtue of his separately-filed notice of appeal. *See* TEX.R.APP. P. 25.1(c).

and which caused injury."[19] A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made.[20] But the mere failure to perform a contract is not evidence of fraud.[21] Accordingly to defeat the defendants' summary judgment motion that there was no material issue of fact on this cause of action, Pierce had to offer summary judgment evidence that the defendants made representations with the intent to deceive and with no intention of performing as represented.[22] There is no summary judgment evidence showing that the defendants knew when the property was posted for sale that it would not, in fact, be sold at the December 5, 1995 sale. Thus, there was no genuine issue of material fact as to Pierce's fraudulent misrepresentation claim, and the trial court correctly granted the defendants a summary judgment on that claim.

### B. NEGLIGENT MISREPRESENTATION

Pierce alternatively pleaded a negligent misrepresentation cause of action and argues

> [t]he statement in the Notice to the effect that ... Key would sell the Property to the highest bidder at the December 5, 1995 foreclosure sale, and ... Key's oral declaration of a "sale" to [Pierce] at the foreclosure sale, constitute false information in light of Defendants' refusal to recognize [Pierce] as the owner of the Property, and such false information was justifiably relied on by [Pierce] to his detriment.

■ To establish negligent misrepresentation, Pierce had to show: (1) the representation was made by Key in the course of his business, or in a transaction in which he has a pecuniary interest; (2) Key supplied "false information" for the guidance of others in their business; (3) Key did not exercise reasonable care or competence in obtaining or communicating the information; and (4) Pierce suffered pecuniary loss by justifiably relying on the representation.[23] The sort of false information contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct.[24]

■ Like Pierce's fraudulent misrepresentation cause of action, his negligent misrepresentation claim must also fail. There is no evidence that Key did not exercise reasonable care or competence in stating that he would sell the property or in orally striking off the property. Thus, because there was no genuine issue of material fact as to one element of Pierce's negligent misrepresentation claim, the trial court correctly granted the defendants a summary judgment on that claim.

### C. DTPA

Pierce next argues that summary judgment on his DTPA claims was improper. He claims that the statements that the property was to be sold to the highest bidder and that the property was struck off to him at the foreclosure sale turned out to be inaccurate and, thus, violated the DTPA.

■ Pierce is alleging that the defendants represented that they would perform under the posted notice and the subsequent nonperformance means that they misrepresented that they would perform

---

**19.** *Sears, Roebuck & Co. v. Meadows,* 877 S.W.2d 281, 282 (Tex.1994) (emphasis omitted).

**20.** *See Schindler v. Austwell Farmers Coop.,* 841 S.W.2d 853, 854 (Tex.1992).

**21.** *See id.*

**22.** *See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex.1998) (op. on reh'g).

**23.** *See Federal Land Bank Assoc. v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991).

**24.** *See Allied Vista, Inc. v. Holt,* 987 S.W.2d 138, 141 (Tex.App.—Houston [14th Dist.] 1999, pet. denied).

under the notice. In other words, Pierce wants to enforce an unenforceable oral agreement through the DTPA. But this type of injury is governed by contract law and not the DTPA.[25] The statements themselves did not cause any harm—the nonperformance caused the alleged harm. Accordingly, Pierce's DTPA claim was untenable, and the trial court correctly granted the defendants summary judgment.[26]

## VI. CONSTRUCTIVE TRUST

■ In his second issue, Pierce argues that the trial court erred in granting a summary judgment denying his request for the imposition of a constructive trust. He claims that because he was fraudulently induced into bidding on the property by the statements in the notice and by Key's statements at the sale, he is entitled to this equitable remedy. But a court will impose a constructive trust only where either actual or constructive fraud exists.[27] Because there was no material fact issue on Pierce's claims of fraudulent and negligent misrepresentation, he was likewise not entitled to a constructive trust. We overrule Pierce's second issue.

## VII. CONCLUSION

We hold that the statute of frauds was complied with; thus, the trial court correctly granted Pierce summary judgment on his declaratory judgment action. Further, the trial court correctly granted summary judgment in the defendants' favor on Pierce's claims for fraudulent misrepresentation, negligent misrepresentation, violations of the DTPA, and a constructive trust. We affirm the trial court's judgment.[28]

---

**25.** *See Crawford v. Ace Sign, Inc.,* 917 S.W.2d 12, 14–15 (Tex.1996).

**26.** *See id.*

**27.** *See Exploration Co. v. Vega Oil & Gas Co.,* 843 S.W.2d 123, 127 (Tex.App.—Houston [14 th Dist.] 1992, writ denied).

**28.** *See* Tex.R.App. P. 43.2(a).