Opinion issued March 24, 2005















In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00272-CV




G. W. McKINZIE COMPANY AND THE AIR CONDITIONING STORE,
INC., Appellants

V.

RAYTHEON APPLIANCES, INC. F/K/A AMANA REFRIGERATION, INC.
D/B/A AMANA SOUTHWEST AND AMANA REFRIGERATION
SOUTHWEST, AMANA COMPANY, L.P., AND GOODMAN HOLDING
COMPANY, Appellees




On Appeal from the 85th District Court
Brazos County, Texas
Trial Court Cause No. 46961-85-CV




MEMORANDUM OPINION
          Appellants, G. W. McKinzie Company (McKinzie Co.) and The Air
Conditioning Store, Inc. (collectively McKinzie), appeal from a final summary
judgment rendered in favor of appellees, Raytheon Appliances, Inc. f/k/a Amana
Refrigeration, Inc. d/b/a Amana Southwest and Amana Refrigeration Southwest,
Amana Company, L.P., and Goodman Holding Company (collectively “Amana”).


 
This case concerns McKinzie’s assertion of various causes of action that alleged that
Amana breached certain agreements it made with McKinzie relating to McKinzie’s
services for Amana as a heating and air conditioning dealer. In three issues,
McKinzie contends that the trial court erred by granting Amana’s no-evidence
motions for summary judgment because it presented sufficient evidence on all of its
causes of action in response to the motion, and by granting Amana’s traditional
motion for summary judgment because (1) McKinzie raised a fact issue as to each
cause of action, (2) Amana did not negate at least one necessary element of each
cause of action, and (3) Amana did not establish an affirmative defense as to each
cause of action. We affirm in part and reverse in part.
 
Background
          In 1991, McKinzie Co. entered into a written agreement with Amana. This
agreement provided that McKinzie Co. was an authorized Amana dealer. From 1991
through 1993, McKinzie Co. purchased the following from Amana: heating and air-conditioning equipment, repair parts, technical support, and credit services for
business in the Harris and Montgomery county areas. McKinzie Co. also sold many
“Asure Extended Service Plan” agreements (Asure warranties) to its customers. By
extending Amana’s manufacturer’s warranty on purchased Amana equipment, the
Asure warranty entitled the bearer of the Asure warranty to free replacement parts and
related service from Amana at no additional cost. In 1993, McKinzie Co. and Amana
mutually terminated the dealership agreement.
          In 1996, McKinzie Co. sold the majority of its assets to Jerry Russell and
signed a noncompete agreement stating that McKinzie Co. would not compete with
Russell in Harris and Montgomery Counties for a period of three years. Gary
McKinzie assigned most of McKinzie Co.’s remaining assets to The Air Conditioning
Store, which he opened for business in the Bryan/College Station area. In April 1997,
The Air Conditioning Store signed a “Dealer Program Summary” and became an
Amana dealer. On September 8, 1997, Amana terminated the business relationship
with The Air Conditioning Store effective September 20, 1997.
 
Procedural HistoryMcKinzie filed an original petition and four amended petitions. The Fourth
Amended Original Petition, which is the last petition McKinzie filed before the final
summary judgment motion was granted, asserted causes of actions as follows: (1) 
“The Asure Warranty” claims for breach of contract, fraud, fraudulent inducement,
negligent misrepresentation, violations of the Deceptive Trade Practices and
Consumer Protection Act (DTPA),


 breach of fiduciary duty, and violations of the
duty of good faith and fair dealing; (2) “The Dealership Agreement” claims for breach
of contract, fraud, negligent misrepresentation, DTPA violations, and breach of
fiduciary duty; (3) The “Financing Services” claims for breach of fiduciary duty, as
well as allegations of DTPA violations and breach of contract.


 McKinzie also
asserted claims against Amana for tortious interference with existing and prospective
contracts and tortious interference with existing and prospective business relations.
          After Amana filed a series of motions for summary judgment, which were
followed by McKinzie’s responses, the trial court signed a “Final Summary
Judgment” in favor of Amana, disposing of all claims and all parties.


 The trial
court’s order rendering final judgment in favor of Amana granted motions that Amana
entitled, “Motion for Partial Summary Judgment”


; “Supplement to Motion for Partial
Summary Judgment”; and “Second Supplement to Motion for Partial Summary
Judgment.” The order does not specify the grounds on which the summary judgment
motions were granted. Amana’s “Supplement to Motion for Partial Summary
Judgment” requested a traditional summary judgment and a no-evidence summary
judgment on McKinzie’s causes of action relating to the Asure Warranties and the
Dealership Agreement. See Tex. R. Civ. P. 166a(c), (i). Amana’s “Second
Supplement to Motion for Partial Summary Judgment” requested a no-evidence
summary judgment by asserting that McKenzie had no evidence of certain elements
necessary for causes of action related to financing services and credit reporting
claims. See Tex. R. Civ. P. 166a(i).Standards of ReviewA party moving for a traditional summary judgment must establish that no
material fact issue exists, and that it is entitled to judgment as a matter of law. Tex.
R. Civ. P. 166a(c); M.D. Anderson Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22,
23 (Tex. 2000). In determining whether a disputed, material fact issue precludes
summary judgment, the court must take evidence favorable to the nonmovant as true
and indulge every reasonable inference in favor of the nonmovant. Nixon v. Mr.
Prop. Mgmt. Co., Inc., 690 S.W.2d 546, 548-49 (Tex. 1985). If there is no genuine
issue of material fact, judgment should issue as a matter of law. Haase v. Glazner,
62 S.W.3d 795, 797 (Tex. 2001). Because the rendition of summary judgment is a
question of law, we review the trial court’s decision de novo. Natividad v. Alexsis,
Inc., 875 S.W.2d 695, 699 (Tex. 1994).
          When, as here, the trial court’s summary judgment order does not specify the
ground or grounds on which summary judgment was rendered, we will affirm if any
of the grounds stated in the motion is meritorious. See Mayes v. Goodyear Tire and
Rubber Co., 144 S.W.3d 50, 55 (Tex. App.—Houston [1st Dist.] 2004, no pet. h.)
(citing Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex.
2001)).
          After adequate time for discovery,


 a party may move for summary judgment
on the ground that there is no evidence of one or more essential elements of a claim
or defense on which the adverse party would have the burden of proof at trial. Tex.
R. Civ. P. 166a(i); Roventini v. Ocular Sciences, Inc., 111 S.W.3d 719, 722 (Tex.
App.—Houston [1st Dist.] 2003, no pet.). The motion must specify which essential
elements of the opponent’s claim or defense lack supporting evidence. Roventini, 111
S.W.3d at 722. Once the party seeking the no-evidence summary judgment files a
proper motion, the respondent must bring forth evidence that raises a fact issue on the
challenged elements. Id. The party with the burden of proof at trial thus has the
burden of proof in the summary judgment proceeding. Id. If the respondent does not
produce more than a scintilla of evidence to raise a genuine issue of material fact on
the challenged element or elements, the trial court must grant the motion. Id. To
defeat a no-evidence motion for summary judgment, the respondent is not required
to marshal its proof in its response and need only point out evidence that raises a fact
issue on the challenged elements. Tex. R. Civ. P. 166a(i); Johnson v. Brewer &
Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002).
The Asure Warranty Claims
          When Amana filed its summary judgment motion, “The Asure Warranty”
claims asserted (A) breach of contract, (B) fraud, (C) fraudulent inducement (D)
negligent misrepresentation, (E) violations of the DTPA, and (F) tortious interference
with existing and prospective contracts, and tortious interference with existing and
prospective business relations.


 After Amana filed its summary judgment motion,
McKinzie added claims for breach of fiduciary duty and violations of the duty of
good faith and fair dealing.



A. Breach of Contract Claim
          In its breach of contract claim, McKinzie contends that, during the parties’ first
business relationship (entered into in 1991 and terminated in 1993), in an oral
contract and in three written documents—the Asure warranties, the Dealer Sales
Manual, and the Amana Advantage Asure Program brochure—Amana formed an
agreement with McKinzie to provide McKinzie with Amana parts for the life of the
outstanding Asure warranties that McKinzie sold to its customers. McKinzie further
contends that Amana breached those agreements by refusing to provide warranty
parts and service payments to McKinzie as promised in those agreements. Amana
responds that no written agreement between McKinzie and Amana existed, and that
any oral agreement violated the Statute of Frauds and was therefore unenforceable.          1. Written Representations
          The essential elements of a breach of contract action are: (1) the existence of
a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach
of the contract by the defendant; and (4) damages sustained by the plaintiff as a result
of the breach. Hussong v. Schwan’s Sales Enters., Inc., 896 S.W.2d 320, 326 (Tex.
App.—Houston [1st Dist.] 1995, no writ).
          Summary judgment is appropriate in cases involving the interpretation of an
unambiguous document. See Coker v. Coker, 650 S.W.2d 391, 393-94 (Tex. 1983);
Bishop v. National Loan Investors, L.P., 915 S.W.2d 241, 245 (Tex. App.—Fort
Worth 1995, writ denied); Bass v. Shell, 957 S.W.2d 159, 160 (Tex. App.—San
Antonio 1997, no pet.). When a contract is unambiguous we will enforce it as
written. Lopez v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 862 (Tex. 2000). 
It is a basic rule of contract law that a court called upon to interpret a contract will
give plain meaning to the words used in the writing. See City of Pinehurst v. Spooner
Addition Water Co., 432 S.W.2d 515, 518-19 (Tex. 1968). Our primary concern in
construing a written contract is to ascertain the true intent of the parties as expressed
in the instrument. Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994);
Coker, 650 S.W.2d at 393. In interpreting a written contract to ascertain the parties’
intent, we must examine and consider the entire writing in an effort to harmonize and
give effect to all provisions of the contract so that none will be rendered meaningless. 
Coker, 650 S.W.2d at 393; Universal C.I.T. Credit Corp. v. Daniel, 243 S.W.2d 154,
158 (Tex. 1951). Thus, no single provision taken alone will be given controlling
effect, and all provisions must be considered with reference to the whole instrument. 
Coker, 650 S.W.2d at 393; Myers v. Gulf Coast Minerals Mgmt. Corp., 361 S.W.2d
193, 196 (Tex. 1962). 
          The plain language of the Asure warranty extended service plan shows that it
is a contract, between Amana and the purchaser of the Asure warranty, that requires
Amana to provide replacement parts to the purchaser of the warranty. The contract
is not between Amana and McKinzie. Although McKinzie contends that language
such as, “contact your installing dealer for service,” and “contact your authorized
Amana dealer to arrange for seasonal maintenance” bound McKinzie and Amana
under the agreement, the warranties provide for the purchaser of the Asure warranty
to obtain services from any authorized Amana dealer and, thus, not just from
McKinzie. Therefore, the warranties did not obligate McKinzie in any way simply
because it sold the Asure warranties. The Asure warranties thus do not show that a
contract existed between Amana and McKinzie for McKinzie to provide any goods
or services under the Asure warranties. 
          McKinzie alternatively contends that it formed an agreement with Amana
through the Dealer Sales Manual, which included the following language: 
“Customers who buy them [Asure warranties] are now tied to the dealer for service
as long as the contract remains in effect”; “Benefits for your customer”; “Talk to your
distributor today about Amana’s Asure Program”; and “Only Amana ASAP factory
approved replacement parts are used.” McKinzie also asserts that an agreement
between McKinzie and Amana arose through a brochure for the Amana Advantage
Asure Program that included statements such as: “Authorized Amana Dealer
Responsibilities” to “Ensure all service is performed using genuine Amana parts.” 
          Both the Dealer Sales Manual and the brochure contain statements to promote
the sale of Amana’s Asure warranty program; they do not include any specific parties,
promises, or obligations between Amana and McKinzie concerning the Asure
program. Contrary to McKinzie’s claims, nothing in the Dealer Sales Manual or the
brochure shows a contract that arose between Amana and McKinzie concerning the
Asure warranties. Customers who purchased the Asure warranties could receive parts
and services from any Amana dealer, and not just from McKinzie. Thus, when
McKinzie ceased operating as an Amana dealer, the purchasers of the Asure
warranties could go to any Amana dealer for parts and services. They were not
required to continue with McKinzie. The Dealer Sales Manual and the brochure for
the Amana Advantage Asure Program do not show a contract between Amana and
McKinzie concerning the Asure warranties. 
          2. Oral Representations
          McKinzie further contends that it entered into an oral contract with Amana that
required Amana to provide McKinzie with Amana replacement parts for the life of
the outstanding Asure warranties. Amana asserts that this alleged agreement violates
the Statute of Frauds and is unenforceable because the Asure warranties involved the
sale of thousands of dollars of parts and the agreements lasted for more than a year.


 
          Section 2.201 of the Business and Commerce Code contains the Texas version
of the Uniform Commercial Code’s statute of frauds. Section 2.201(a) states, in part
as follows: 
                    Except as otherwise provided in this section a contract for
the sale of goods for the price of $500 or more is not
enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale
has been made between the parties and signed by the party
against whom enforcement is sought or by his authorized
agent or broker. . . .
Tex. Bus. & Com. Code Ann. § 2.201(a) (Vernon 1994). Whether a contract falls
within the statute of frauds is a question of law. Iacono v. Lyons, 16 S.W.3d 92, 94
(Tex. App.—Houston[1st Dist.] 2000, no pet.) McKinzie’s pleadings allege that
Amana agreed to sell “thousands of dollars” of warranty parts for multiple years. 
Because the alleged agreement thus contemplated a sale of goods at a price of $500
or more, the agreement is subject to section 2.201 and is unenforceable as a matter of
law. Tex. Bus. & Com. Code Ann. § 2.201(a); Malone v. E.I. du Pont de Nemours
& Co., 8 S.W.3d 710, 715 (Tex. App.—Fort Worth 1999, pet. denied) (holding that
statute of frauds applied to transaction that undisputedly contemplated alleged
contract for more than $500).
          The written documents here do not show that any agreement existed between
Amana and McKinzie for the sale of goods or services under the Asure warranties. 
Under the Statute of Frauds, any oral agreement for the value of the goods or services
asserted here was unenforceable.


 
B. Fraud Claim
          McKinzie’s fraud claim asserts that Mckinzie relied on Amana’s oral promises
to continue to provide parts and payments to McKinzie.


 
          To prevail on a fraud claim, a plaintiff must prove that (1) the defendant made
a material representation that was false; (2) the defendant knew the representation
was false or made it recklessly as a positive assertion without any knowledge of its
truth; (3) the defendant intended to induce the plaintiff to act upon the representation;
and (4) the plaintiff actually and justifiably relied upon the representation and thereby
suffered injury. Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577
(Tex. 2001). 
          Amana responds that the Statute of Frauds prohibits McKinzie’s fraud claim.
In determining whether a fraud cause of action is barred by the Statute of Frauds, we
must consider: (1) the relationship of the promise to the purpose of the statute and
(2) the nature of damages sought. Jim Walter Homes, Inc., v. Reed, 711 S.W.2d 617,
618 (Tex. 1986); Leach v. Conoco, Inc., 892 S.W.2d 954, 960 (Tex. App.—Houston
[1st Dist.] 1995, writ dism’d w.o.j.). In determining whether a plaintiff is attempting
to use a fraud claim to circumvent the Statute of Frauds, the essential inquiry is into
the nature of the injury alleged. Leach, 892 S.W.2d at 960. When the injury alleged
is solely the economic loss to the subject of the contract itself, the action sounds in
contract alone. Id. In other words, the Statute of Frauds bars the fraud cause of
action of a plaintiff who seeks to obtain the benefit of the bargain that he would have
obtained had the promise been performed. Id. 
          Here, McKinzie’s fraud claim seeks the same damages as it contract claim. 
Because these damages constituted the benefit of McKinzie’s alleged bargain with
Amana, the Statute of Frauds renders McKinzie’s fraud claim unenforceable. See id.
C. Fraudulent Inducement Claim
          Fraudulent inducement is a particular species of fraud that arises only in
context of a contract and requires the existence of a contract as part of its proof. 
Haase, 62 S.W.3d at 798-99. This means that, in a fraudulent inducement claim, the
elements of fraud must be established as they relate to an agreement between the
parties. Id. As held above, neither the Asure warranty, the Dealer Sales Manual, the
Amana Advantage Asure Program brochure, nor Amana’s alleged oral promises to
continue providing parts and payments formed an enforceable contract between
McKinzie and Amana. Accordingly, McKinzie’s fraudulent inducement claim must
fail. See id.
D. Negligent Misrepresentation Claim
          To prevail on a negligent misrepresentation claim, a plaintiff must demonstrate
(a) that the defendant (1) made a representation in the course of his business, or in a
transaction in which he had a pecuniary interest, (2) supplied false information for the
guidance of others in their business, and (3) did not exercise reasonable care or
competence in obtaining or communicating the information, and (b) that the plaintiff
suffered pecuniary loss by justifiably relying on the representation. Fed. Land Bank
Ass’n. v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991); Coastal Bank SSB v. Chase Bank,
N.A., 135 S.W.3d 840, 842-43 (Tex. App.—Houston [1st Dist.] 2004, no pet.).
          Significantly, the sort of “false information” contemplated in a
negligent-misrepresentation case is a statement of existing fact, not a promise of
future conduct. New York Life Ins. Co. v. Miller, 114 S.W.3d 114, 125 (Tex.
App.—Austin 2003, no pet.); Key v. Pierce, 8 S.W.3d 704, 709 (Tex. App.—Fort
Worth 1999, pet. denied); Allied Vista, Inc. v. Holt, 987 S.W.2d 138, 141 (Tex.
App.—Houston [14th Dist.] 1999, pet. denied); Smith v. Sneed, 938 S.W.2d 181, 185
(Tex. App.—Austin 1997, no writ); Airborne Freight v. C.R. Lee Enters., 847 S.W.2d
289, 294-95 (Tex. App.—El Paso 1992, writ denied).
          McKinzie contends that Amana represented that “if McKinzie Co. would agree
to return as an Amana dealer Amana would provide warranty parts and warranty
service payments even if McKinzie Co. later ceased to be an Amana dealer or
servicer.” This is not a statement of existing fact; it relates to promises regarding
future conduct only and is therefore not actionable as negligent misrepresentation. 
See New York Life Ins. Co., 114 S.W.3d at 125; Key, 8 S.W.3d at 709.
E. DTPA Claim
          Amana argues that McKinzie’s DTPA claim is identical to its breach of
contract claim, and that McKinzie is attempting to convert the alleged breach of
contract claim into a DTPA claim. The supreme court has repeatedly held that, “An
allegation of a mere breach of contract, without more, does not constitute a ‘false,
misleading or deceptive act’ in violation of the DTPA.” Rocky Mountain Helicopters,
Inc., v. Lubbock County Hosp. Dist., 987 S.W.2d 50, 53 (Tex. 1998); Crawford v. Ace
Sign, Inc., 917 S.W.2d 12, 14-15 (Tex. 1996); Ashford Dev., Inc. v. USLife Real
Estate Servs. Corp., 661 S.W.2d 933, 935 (Tex. 1983). Even if taken as true,
Amana’s statements were nothing more than representations that Amana would fulfill
its contractual duty to continue to provide parts and payments to McKinzie. Thus, the
breach of that duty sounds only in contract. See Crawford, 917 S.W2d at 14. 
Similarly, the statements themselves did not cause any harm beyond the alleged harm
caused by the alleged breach of the contract. See id. Contract law, not the DTPA, is
the appropriate mechanism to address the damages McKinzie claimed. See id. at 14-15. 
          Accordingly, in regard to the Asure warranty claims, we hold that the trial court
did not err in granting summary judgment on McKinzie’s claims for breach of
contract, fraud, fraudulent inducement, negligent misrepresentation, and violations
of the DTPA.
The Dealership-Agreement Claims
          When Amana filed its motion for summary judgment, “The Dealership
Agreement” claims were for (A) breach of contract, (B) fraud, (C) negligent
misrepresentation, (D) DTPA violations, and (E) tortious interference with existing
and prospective contracts, and with existing and prospective business relations. After
Amana filed its motion, McKinzie added claims for breach of fiduciary duty. 
McKinzie contends that, in late 1995 or 1996, Amana and McKinzie entered into an
oral dealership agreement. McKinzie contends that its dealership agreement with
Amana contained the following provisions: (1) Amana would provide air
conditioning and heating units, repair parts, technical support, credit services,
advertising funds and extended warranty availability to McKinzie, (2) McKinzie
would have a near-exclusive territory to market in and around the Bryan and College
Station, Texas areas, (3) Amana would eventually terminate the authorized-Amana-dealer status of Russell Yates, (4) the dealership agreement would not be terminated
as long as McKinzie advertised the Amana brand and as long as sales continued to
increase in McKinzie’s territory, and (5) Amana promised to reduce the dealership
agreement to writing.
A. Breach of Contract Claim
          McKinzie contends that Amana breached the alleged oral agreement by
violating each of the provisions listed above. Although McKinzie alleges that Amana
promised to reduce the oral agreement to writing, McKinzie has not claimed that
Amana ever promised to sign a specific written agreement or that any written
agreement was in existence when Amana made the alleged promise. 
          Amana responds to McKinzie’s claim that an oral agreement existed by
asserting that the Statute of Frauds renders the alleged agreement unenforceable. 
McKinzie’s pleadings allege that the oral dealership agreement provided for the sale
of thousands of dollars worth of Amana products for a term of multiple years. Thus,
the alleged agreement here, for the sale of goods for the price of $500 or more, is
unenforceable under the Statute of Frauds. Tex. Bus. & Com. Code Ann. §
2.201(a); Malone, 8 S.W.3d at 715. 
          McKinzie contends, however, that the Statute of Frauds does not bar
enforcement of the oral agreement because of the promissory estoppel exception to
the Statute of Frauds. Amana counters that, for the promissory estoppel exception to
apply, McKinzie must show that Amana had promised to sign a prepared, written
agreement that complies with the Statute of Frauds. See CRSS, Inc. v. Runion, 992
S.W.2d 1, 7 (Tex. App.—Houston [1st Dist.] 1995, writ denied); Beta Drilling, Inc.
v. Durkee, 821 S.W.2d 739, 741 (Tex. App.—Houston [14th Dist.] 1992, writ
denied). 
          McKinzie’s brief on appeal asserts only generally that “Amana’s promise to
reduce the dealership agreement to writing removed the agreement from the
requirements of the Statute of Frauds.” Even if true, this claim is not sufficient to
defeat the Statute of Frauds because complete agreement on the terms and wording
of the written contract is required to permit the application of promissory estoppel to
a statute-of-frauds defense. CRSS, Inc., 992 S.W.2d at 7. A promise to prepare a
written agreement, as alleged here, is not sufficient. See id.



B. Fraud Claim
          As discussed above in reference to the fraud claim on the Asure warranties,
McKinzie seeks the same damages for its fraud claim under the dealership agreement
as for its contract claim under the dealership agreement. Because these damages
constitute the benefit of McKinzie’s alleged bargain with Amana, the Statute of
Frauds renders McKinzie’s fraud claim unenforceable. See Leach, 892 S.W.2d at
960.
C. Negligent Misrepresentation Claim
          As previously discussed, the “false information” in a
negligent-misrepresentation case contemplates a statement of existing fact, not a
promise of future conduct. New York Life Ins. Co., 114 S.W.3d at 125. McKinzie
contends that, under the dealership agreement, Amana made the following
representations: (1) Amana would provide parts, support, services, funds, and
extended warranty availability to McKinzie, (2) McKinzie would have a near-exclusive market territory in and around the Bryan and College Station, Texas areas,
(3) Amana would eventually terminate the authorized-Amana-dealer status of Russell
Yates, (4) the dealership agreement would not be terminated as long as McKinzie
advertised the Amana brand and as long as sales continued to increase in McKinzie’s
territory, and (5) Amana would reduce the dealership agreement to writing. Because
these representations are not statements of existing fact, but relate to promises
regarding future conduct only, they are not actionable as negligent misrepresentation. 
See id. at 125; Key, 8 S.W.3d at 709. 
D. DTPA Claim
          As addressed in the section concerning McKinzie’s DTPA claims under the
Asure warranties, Amana’s statements, if taken as true, were nothing more than
representations that Amana would fulfill its alleged contractual duties. Accordingly,
breach of those duties sound only in contract. See Crawford, 917 S.W2d at 14. The
statements outside of any breach of the alleged contract did not cause any harm. See
id. The alleged failures to continue providing parts and payments, to provide an
exclusive territory, to terminate Russell Yates’s dealer status, and to reduce the
agreement to writing are the alleged causes of McKinzie’s allegedly lost profits,
which injury is governed by contract law, not the DTPA. See id. at 14-15.
          Accordingly, in regard to the Dealership Agreement claims, we hold that the
trial court did not err by rendering summary judgment against McKinzie on its claims
for breach of contract, fraud, negligent misrepresentation, and violations of the
DTPA.
Tortious Interference Claims
          McKinzie contends that the trial court erred by granting the no-evidence
summary judgment on its claims against Amana for tortious interference with existing
and prospective contracts. McKinzie asserts that Amana tortiously interfered with (1)
the Asure warranty contracts between The Air Conditioning Store and its customers
by refusing to sell, and refusing to allow others to sell, any products or services to
The Air Conditioning Store while the Asure warranties were still in effect; (2)
contracts between The Air Conditioning Store and other authorized Amana dealers
for the purchase of Amana equipment by persuading other authorized Amana dealers
not to sell products to The Air Conditioning Store; and (3) financing contracts
between The Air Conditioning Store and Household Retail Services, Inc. (HRSI) by
urging HRSI to revoke financing that it had already approved on two of The Air
Conditioning Store’s customers. 
          In moving for a no-evidence summary judgment on McKinzie’s tortious
interference claims, Amana alleged, among other things, that McKinzie did not
produce any evidence of damages.


 Accordingly, the burden shifted to McKinzie to
produce more than a scintilla of evidence to raise a genuine issue of material fact. See
Tex. R. Civ. P. 166a(i); Roventini, 111 S.W.3d at 722. In its multiple responses to
Amana’s summary judgment motions, McKinzie did not produce any evidence of
how, or even if, it suffered damages from Amana’s alleged tortious interference. 
Furthermore, McKinzie’s responses to the motion for summary judgment contained
mere assertions that did not constitute competent summary judgment proof. See
Feazell v. Mesa Airlines, Inc., 917 S.W.2d 895, 898 (Tex. App.—Fort Worth 1996,
writ denied) (stating that neither response to motion for summary judgment nor
petition accompanying response is summary judgment evidence). 
          Because McKinzie did not meet its burden to produce evidence to defeat
Amana’s no-evidence motion for summary judgment, we hold that the trial court did
not err in granting that motion on McKinzie’s tortious interference claims. See
Johnson, 73 S.W.3d at 207; see also Roventini, 111 S.W.3d at 722 (holding that trial
court must grant motion if respondent does not produce more than scintilla of
evidence to raise genuine issue of material fact on challenged element or elements).
Other Claims
          We now consider whether the trial court erred by granting final summary
judgment on McKinzie’s (1) Asure warranty claims for breach of fiduciary duty and
violations of the duty of good faith and fair dealing, (2) Oral Dealership Agreement
claims for breach of fiduciary duty, and (3) Financing Services claims for breach of
fiduciary duty.
          As addressed above, Amana filed its second and final supplements to its motion
for partial summary judgment on June 26, 2001. McKinzie then filed its fourth
amended original petition on December 19, 2002. That petition added the causes of
actions noted in the preceding paragraph. None of Amana’s summary judgment
motions addressed these causes of action. On February 11, 2003, the trial court
rendered final summary judgment in favor of Amana, disposing of all parties and
causes of action. In disposing of all of McKinzie’s claims, therefore, the trial court
erred by granting more relief than Amana requested. See Bandera Elec. Coop., Inc.
v. Gilchrist, 946 S.W.2d 336, 337 (Tex. 1997); Postive Feed, Inc. v. Guthmann, 4
S.W.3d 879, 881 (Tex. App.—Houston [1st Dist.] 1999, no pet.). When, as here, a
trial court grants more relief by summary judgment than requested by disposing of
issues never presented by any motion, the interests of judicial economy demand that
we reverse and remand as to those issues, but address the merits of the properly
presented claims. See Postive, 4 S.W.3d at 881.
          Having addressed those claims properly presented by Amana’s motions and
having affirmed the summary judgment rendered as to those claims, we reverse the
judgment of the trial court and remand to that court for disposition of McKinzie’s
unresolved claims. See Id. 
 
 
 
 
 
 
 
 
 
 
Conclusion
          We reverse the trial court’s order granting summary judgment on McKinzie’s
(1) Asure warranty claims for breach of fiduciary duty and violations of the duty of
good faith and fair dealing, (2) the Dealership Agreement claim for breach of
fiduciary duty, and (3) Financing Services claim for breach of fiduciary duty. We
affirm the judgment of the trial court in all other respects.
 
Elsa Alcala
                                                             Justice
 
Panel consists of Justices Nuchia, Jennings, and Alcala.